UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON


EUGENE LONG

        Plaintiff

v.                                    Civil Action No. 2:09-0349

CLYDE BLAIR

        Defendant

MEMORANDUM OPINION AND ORDER

        Pending is defendant Clyde Blair's motion to dismiss,
filed April 27, 2009.


I.


        Plaintiff Eugene Long is an Ohio citizen.  He is the
only surviving sibling and common law heir of Loretta Marie
Miller.  Blair is a West Virginia citizen who is unrelated to
Miller by blood or marriage.

        Prior to her death on September 30, 2008, at the age of
86, Miller was in poor health and suffered from a myriad of
physical and mental ailments.  Nevertheless, she signed and
acknowledged a document entitled "Last Will and Testament of
Loretta Marie Miller" ("Will") on March 20, 2008.  The Will

bequeathed all of her "monies, household furniture, household goods, automobiles, and all other [of her] tangible and intangible personal properties," as well as "[a]ll the rest of and residue of [her] property" solely to Blair.  The Will also devised solely to Blair "all of her right, title and interest in any real estate," owned by her and appointed him as executor.

Attorney Greg K. Smith drafted the Will.  At the time the document was created, Smith was serving as a member of the Mingo County Commission, an office he still occupies.  Smith also served as a witness to the Will and his employee, Teresa L. Mills, notarized it.

On October 9, 2008, nine days after Miller's passing, Blair offered the Will for probate to the Clerk of the Mingo County Commission ("county commission").  The Clerk entered the Will for probate that same day, and the county commission later confirmed that probate order, with Smith not participating in the decision.  The probate order also reflects that Blair filed an affidavit showing Miller's distributees and beneficiaries.  The affidavit, however, was actually executed after entry of the probate order by the Clerk.  Long was identified in the affidavit.

2

On or about October 17, 2008, Long received a letter from Smith stating he had been retained to represent the Miller estate.  He enclosed a copy of the Will and advised Long that any objections should be filed with the Mingo County Clerk "within the appropriate time deadline."  (Compl. exs. at 9).  While the deadline was not mentioned, Smith advised Long to seek counsel if he desired to challenge the Will.  West Virginia Code section 41-5-10 requires anyone wishing to contest the probate of a will to appear before the county commission before the will is admitted and probated.

On January 9, 2009, Long, by his former counsel, Jeaneen J. Legato, moved the county commission to vacate the probate order.  On January 14, 2009, Ms. Legato was informed by Glen R. Rutledge, counsel to the Mingo County Commission, as follows:

> Mrs. Miller's will was admitted to probate under [West Virginia Code] § 41-1-10.[1]

---

[1]Section 41-1-10 appears to be miscited for the proposition. That statute provides as follows:

> The validity and effect of wills executed prior to the time this Code becomes effective shall be determined by the laws of this State in force at the time of their execution. Every will re-executed, or republished, or revived by any codicil, shall, for the purposes of this chapter, be deemed to have been made at the time at which the same shall be so re-executed, republished, or revived.

Id.

[Section] . . . 41-1-10 provides for an appeal, before the Commission, of the will's admission to probate if the person entitled to contest the will appears before the clerk or the Commission before either the clerk decides to admit the will or the Commission confirms its admission by order.  If the contestant has not appeared before the clerk or the Commission in time, then his/her appeal of the will's admission is to the circuit court.

It appears that your client has not appeared before the clerk or the Commission in time in order to contest the will before the Commission.  Therefore, in my opinion a hearing before the Commission would be a waste of your time and efforts.

Please advise me at your earliest convenience as to your opinion of this position.  If you disagree, then Tina Lockard will schedule you a time and date for a hearing.

(Id. at 10).


On April 8, 2009, Long instituted this action with his "COMPLAINT TO IMPEACH THE LAST WILL AND TESTAMENT OF LORETTA MARIE MILLER BY ISSUE OF DEVISAVIT VEL NON."[2]  (Compl. at 1).

------------------------

[2]Black's Law Dictionary defines devisavit vel non as follows:

An issue directed from a chancery court to a court of law to determine the validity of a will that has been contested, as by an allegation of fraud or testamentary incapacity.

Black's Law Dictionary (8th ed. 2004); see also Miller v. Robinson, 171 W. Va. 653, 656, 301 S.E.2d 610, 613 (1983).

4

Count One alleges the Will's failure to reflect the signatures of
the required two competent witnesses.  Specifically, Long alleges
as follows:

> Smith's blatant violation of the rules governing his
> elected office and his profession deprive him of the
> competency to be a witness to the Will.  Thus, as the
> Will's execution was not witnessed by two competent
> witnesses, it has failed to meet the requisite
> formalities of W. Va. Code § 41-1-2, and must be
> declared invalid.

(Compl. ¶ 32).  Count Two alleges undue influence, contending
that Miller was "not of sound mind and disposing memory."
(Compl. ¶ 35).  The prayer for relief requests the court to:

> impeach the . . . [Will] by Issue of <u>Devisavit</u> <u>Vel</u> <u>Non</u>,
> vacate the Order admitting the Will to probate in Mingo
> County, West Virginia, and properly recognize Mr. Long,
> Ms. Miller's sole surviving heir, as the Will's proper
> beneficiary under the laws of intestate succession.

(Compl. PRAYER FOR RELIEF).

On April 27, 2009, Blair moved to dismiss pursuant to
Federal Rule of Civil Procedure 12(b)(1).  Blair asserts that the
court lacks subject matter jurisdiction under the probate
exception to 28 U.S.C. § 1332(a)(1).  Long confirms that this is
an action "to impeach the Will" but asserts that the probate
exception is inapplicable, relying on case law and West Virginia
Code section 41-5-11, which provides pertinently as follows:

> After a judgment or order entered as aforesaid in a
> proceeding for probate <u>ex</u> <u>parte</u>, any person interested

5

who was not a party to the proceeding, or any person
who was not a party to a proceeding for probate in
solemn form, may proceed by complaint to impeach or
establish the will, on which complaint, if required by
any party, a trial by jury shall be ordered, to
ascertain whether any, and if any, how much, of what
was so offered for probate, be the will of the
decedent. The court may require all other testamentary
papers of the decedent to be produced, and the inquiry
shall then be which one of all, or how much of any, of
the testamentary papers is the will of the decedent. If
the judgment or order was entered by the circuit court
on appeal from the county commission, such complaint
shall be filed within six months from the date thereof,
and if the judgment or order was entered by the county
commission and there was no appeal therefrom, such
complaint shall be filed within six months from the
date of such order of the county commission. If no such
complaint be filed within the time prescribed, the
judgment or order shall be forever binding. . . .

Id.; see (Resp. to Mot. to Dism. at 2, 3).  Blair replies that

the recent decision in Marshall v. Marshall, 547 U.S. 293 (2006),

effectively supercedes the authorities relied upon by Long.


II.


Long cites the court's unpublished decision in Schreier

v. Falbo, No. 2:92-0175 (S.D. W. Va. Mar. 31, 1993).  In Falbo,

plaintiff sought, inter alia, to impeach the will of her putative

father.  The challenged will had previously been admitted to

probate ex parte.  Plaintiff contended that the will was "not the

true last will and testament of" the deceased and that she, as

6

the sole intestate heir and distributee, was entitled to the entirety of the estate.  Id. at 3.

Plaintiff contended that an exception to the probate carve out "exist[ed] in diversity cases where a state statute provides for a suit to annul a will or set aside the probate." Id. at 7-8.  She cited West Virginia Code section 41-5-11 as such a statute.[3]  Relying upon Sutton v. English, 246 U.S. 199 (1918),

_____

[3]West Virginia Code section 41-5-11 provides as follows:

After a judgment or order entered as aforesaid in a proceeding for probate ex parte, any person interested who was not a party to the proceeding, or any person who was not a party to a proceeding for probate in solemn form, may proceed by complaint to impeach or establish the will, on which complaint, if required by any party, a trial by jury shall be ordered, to ascertain whether any, and if any, how much, of what was so offered for probate, be the will of the decedent. The court may require all other testamentary papers of the decedent to be produced, and the inquiry shall then be which one of all, or how much of any, of the testamentary papers is the will of the decedent. If the judgment or order was entered by the circuit court on appeal from the county commission, such complaint shall be filed within six months from the date thereof, and if the judgment or order was entered by the county commission and there was no appeal therefrom, such complaint shall be filed within six months from the date of such order of the county commission. If no such complaint be filed within the time prescribed, the judgment or order shall be forever binding. Any complaint filed under this section shall be in the circuit court of the county wherein probate of the will was allowed or denied.

Id.

the court agreed:

> [W]ill contests [in West Virginia] are not considered
> pure probate matters and may be filed as original
> proceedings in state circuit courts pursuant to . . .
> [section] 41-5-11. . . . [W]ill contests are not the
> same as probate.
>
> . . . .
>
> Accordingly, plaintiff's cause of action to
> impeach the will is properly before the court inasmuch
> as . . . [section] 41-5-11 permits such suits to be
> filed in its courts of general jurisdiction.

Id. at 9-10; see also Eunice L. Ross & Thomas J. Reed, Will

Contests § 4:10 (2009)("However, a will contest can be filed in

federal court if the controlling principles of law in the state

in which the will was admitted to probate state that a will

contest can be brought after probate in a court of general

jurisdiction."); Christopher J. Winton & Mark W. Kelley, Laying

Claim: A Practitioner's Guide to Will Contests in West Virginia,

96 W. Va. L. Rev. 123, 127 (1993) (footnote omitted) ("In a

proper case which meets the requirements of diversity

jurisdiction, a West Virginia will contest may be brought in the

United States District Court.  Federal jurisdiction lies because

in West Virginia the will contest is brought in the state court

of general jurisdiction as a suit inter partes.").

        The decision in Falbo was all but compelled by our

court of appeals' decision many years ago in Foster v. Carlin,

200 F.2d 943 (4th Cir. 1953):

> The law is well settled that the federal courts have no jurisdiction over matters within the exclusive jurisdiction of state probate courts. However, as to matters which do not involve administration of an estate or the probate of a will, but which may be determined in a separate action <u>inter partes</u> in the courts of general jurisdiction of the state, the federal courts do have jurisdiction if the requisite diversity of citizenship exists.
>
> > 'In each case the jurisdictional question can be decided by determining whether the action could be maintained in a state court of general jurisdiction in the state where the federal court sits.'

<u>Id.</u> at 947.

This line of settled authority would overcome Blair's reliance on the probate exception but for certain language he quotes from the recent <u>Marshall</u> decision. In <u>Marshall</u>, the petitioner, Vickie Lynn Marshall ("Ms. Marshall"), also known as Anna Nicole Smith, survived her deceased husband J. Howard Marshall II. Mr. Marshall included nothing for Ms. Marshall in his will. One of Mr. Marshall's sons, E. Pierce Marshall ("Pierce"), however, was provided for in a very significant way by his father. Competing estate claims between Ms. Marshall and Pierce thereafter arose in various state and federal fora.

During proceedings in the state probate court, Ms. Marshall declared bankruptcy. In response to a claim filed by Pierce in the bankruptcy proceeding claiming that Ms. Marshall

had defamed him, Ms. Marshall instituted a counterclaim against Pierce for tortious interference with her expected inheritance. The bankruptcy court ultimately entered a sizeable judgment for Ms. Marshall on her tortious interference counterclaim, awarding approximately $449 million in compensatory damages and $25 million in punitive damages.

Pierce moved posttrial to dismiss Ms. Marshall's counterclaim for lack of subject matter jurisdiction.  He asserted that the tortious interference counterclaim could be pursued only in the state probate court proceedings.[4]

Pierce appealed the bankruptcy court judgment.  The district court affirmed respecting much of the bankruptcy court's substantive analysis regarding the probate exception.  After reviewing the merits de novo, the district court also affirmed the judgment as to liability, albeit in a lesser amount of $88.6 million in compensatory and punitive damages combined.

_____

[4]Prior to the bankruptcy court's judgment, Pierce asked the state probate court to deem Mr. Marshall's will and trust valid. Ms. Marshall responded in that forum, again prior to the bankruptcy court judgment, with claims that the will and trust were invalid and that Pierce had tortiously interfered with her expected inheritance.  Ms. Marshall abandoned both claims in the state probate court when the bankruptcy court entered its judgment.  Following a later jury trial, the state probate court declared the trust and will valid.

10

The United States Court of Appeals for the Ninth
Circuit reversed and remanded.  The panel concluded that the
probate exception barred Ms. Marshall's tortious interference
counterclaim in the bankruptcy court.  In reversing and remanding
the case, the Supreme Court observed "that the Ninth Circuit had
no warrant from Congress, or from decisions of this Court, for
its sweeping extension of the probate exception."  Id. at
299-300.

Blair seizes on the following language found in
Marshall:

> [T]he probate exception reserves to state probate
> courts the probate or annulment of a will and the
> administration of a decedent's estate; it also
> precludes federal courts from endeavoring to dispose of
> property that is in the custody of a state probate
> court. But it does not bar federal courts from
> adjudicating matters outside those confines and
> otherwise within federal jurisdiction.

Id. (emphasis added).  Despite the seeming categorical nature of
the underscored language, it appears that the Supreme Court was
merely observing that in those instances when state probate
courts are exclusively authorized to resolve will challenges, a
federal court must not interfere.  When the state scheme permits
a state court of general jurisdiction to resolve will contests,
however, there is no basis for invoking the probate exception to

11

bar the exercise of federal subject matter jurisdiction.  This
view finds support in <u>Marshall</u> and the case law that preceded it.

      First, the Supreme Court observed at the outset of
<u>Marshall</u> the long-enduring admonition of Chief Justice Marshall
respecting the exercise of federal subject matter jurisdiction:

> "'It is most true that this Court will not take
> jurisdiction if it should not: but it is equally true,
> that it must take jurisdiction if it should . . . We
> have no more right to decline the exercise of
> jurisdiction which is given, than to usurp that which
> is not given.'"

<u>Id.</u> at 298-99 (quoting <u>Cohens v. Virginia</u>, 19 U.S. (6 Wheat.)
264, 404 (1821)); <u>see</u> <u>also</u> <u>Lefkowitz v. Bank of New York</u>, 528
F.3d 102, 106 (2nd Cir. 2007)("Following <u>Marshall</u> we must now
hold that so long as a plaintiff is not seeking to have the
federal court administer a probate matter or exercise control
over a <u>res</u> in the custody of a state court, if jurisdiction
otherwise lies, then the federal court may, indeed must, exercise
it.").

      From a general standpoint, when a legislature
authorizes a state court of general jurisdiction to resolve will
contests, it is reasonable to infer a legislative judgment that
more specialized probate court treatment is unnecessary for such
disputes.  So once a legislature determines that will contests

are a proper subject for disposition by a state court of general jurisdiction, those disputes fall in line with the host of other actions, like routine contract cases, tort claims, and the balance of the ordinary civil docket entrusted to the state court of general jurisdiction.

Inasmuch as a federal court seized with subject matter jurisdiction pursuant to section 1332(a)(1) is authorized in the usual case to resolve these garden-variety state law claims in the same manner as those who serve on the state bench, there is no basis for being especially solicitous of will contests.  A federal tribunal would be in a curious position if it independently dismissed a will contest as matter reserved to a state probate court when the legislature deemed those contests as suitable for resolution by its courts of general jurisdiction. Such an action would run counter to the court's obligation to exercise the jurisdiction granted to it.

Second, the quoted portion from Marshall relied upon by Blair yields when read in context with other language found in the majority opinion and Supreme Court precedent generally.  The decision in Marshall contains an extended excerpt from Markham v. Allen, 326 U.S. 490 (1946), an earlier decision that attempted to stake out the boundaries of the probate exception:

"It is true that a federal court has no jurisdiction to
probate a will or administer an estate . . . . But it
has been established by a long series of decisions of
this Court that federal courts of equity have
jurisdiction to entertain suits 'in favor of creditors,
legatees and heirs' and other claimants against a
decedent's estate 'to establish their claims' so long
as the federal court <u>does not interfere with the
probate proceedings or assume general jurisdiction of
the probate or control of the property in the custody
of the state court</u>."

"[W]hile a federal court may not exercise its
jurisdiction to disturb or affect the possession of
property in the custody of a state court, . . . it may
exercise its jurisdiction to adjudicate rights in such
property where the final judgment does not undertake to
interfere with the state court's possession save to the
extent that the state court is bound by the judgment to
recognize the right adjudicated by the federal court."

<u>Id.</u> at 494 (<u>Markham v. Allen</u>, 326 U.S. at 494)(emphasis added).

        Suggesting the second paragraph above quoted from

<u>Markham</u> described "a probate exception of distinctly limited

scope[,]" the majority opinion observed as follows:

    Lower federal courts have puzzled over the meaning of
    the words "interfere with the probate proceedings," and
    some have read those words to block federal
    jurisdiction over a range of matters well beyond
    probate of a will or administration of a decedent's
    estate. . . .

        We read <u>Markham</u>'s enigmatic words, in sync with
    the second [paragraph above], to proscribe
    "disturb[ing] or affect[ing] the possession of property
    in the custody of a state court." . . . In short, we
    comprehend the "interference" language in <u>Markham</u> as
    essentially a reiteration of the general principle
    that, <u>when one court is exercising in rem jurisdiction
    over a res, a second court will not assume in rem</u>

14

> jurisdiction over the same res. . . . Thus, the probate
> exception reserves to state probate courts the probate
> or annulment of a will and the administration of a
> decedent's estate; it also precludes federal courts
> from endeavoring to dispose of property that is in the
> custody of a state probate court. But it does not bar
> federal courts from adjudicating matters outside those
> confines and otherwise within federal jurisdiction.

Marshall, 547 U.S. at 311-12 (emphasis added).

    In context, then, the Supreme Court understands the probate exception to extend only to those situations where the federal court is asked to administer a probate matter or the exercise of federal subject matter jurisdiction would disturb or effect the possession of property in the custody of a state court.  In the instant case, the court is not being asked to administer a probate matter.  Neither does this case portend any disturbance of, or effect upon, possession of a res held by the county commission.  The county commission has apparently concluded its probate proceedings.[5]  Had that body not terminated its control over those estate matters committed to it though, the court has not been asked, and would not undertake, to disturb or affect the possession of any property in the county commission's

_____

[5]Long also seeks vacatur of the order admitting the Will to probate and recognition of Long as Miller's sole surviving heir. The court does not pass presently on whether these further avenues of relief are available in light of the probate exception.

15

custody.[6]  The claims alleged by Long thus do not fall within the probate exception as fully articulated by <u>Marshall</u> and <u>Markham</u>.

Third, there is no indication from <u>Marshall</u>, or from the circuit courts of appeal in its wake, that the Supreme Court <u>sub</u> <u>silentio</u> upended that settled body of case law discussed earlier that permits the exercise of federal jurisdiction over a will contest where the state courts of general jurisdiction are seized with authority to resolve those types of disputes.  <u>See</u>, <u>e.g.</u>, <u>Sutton v. English</u>, 246 U.S. 199, 205 (1918)("[W]here a state, by statute or custom, gives to parties interested the right to bring an action or suit <u>inter</u> <u>partes</u>, either at law or in equity, to annul a will or to set aside the probate, the courts of the United States, where diversity of citizenship and a sufficient amount in controversy appear, can enforce the same remedy, but that this relates only to independent suits, and not to procedure merely incidental or ancillary to the probate . . . ."); Ronald Mirvis, <u>Modern Status of Jurisdiction of Federal</u>

---

[6]In the last line of his reply brief, Blair asserts that "as the estate remains open, the probate property is currently in the custody of the [c]ounty [c]ommission . . . and thus should not be disposed of by this Court."  (Reply at 4).  There is no support offered for this conclusory statement.  In any event, as noted, the court does not intend to take custody of or otherwise impair any property that might remain in the county commission's custody.

Courts, Under 28 U.S.C.A. § 1332(a), of Diversity Actions

Affecting Probate or Other Matters Concerning Administration of

Decedents's Estates, 61 A.L.R. Fed. 536 (noting "cases that would

be beyond the federal court's jurisdiction [under the probate

exception] can nevertheless be heard by a federal court if the

state's court of general equity jurisdiction is empowered to hear

the case, either concurrently with the probate court or in its

place.").[7]

        If the court turned away Long's challenge in light of

section 41-5-11, it would represent an expansion of the probate

---

        [7]The only case approaching a contrary result is Wisecarver
v. Moore, 489 F.3d 747 (6th Cir. 2007).  In Wisecarver,
plaintiffs instituted a federal action in Kentucky seeking to
invalidate a will.  They asserted that defendants unlawfully
caused the testator to sign testamentary documents and that
plaintiffs were the rightful heirs.  The United States Court of
Appeals for the Sixth Circuit observed as follows:

    Plaintiffs seek . . . a declaration that [the
    testator's] . . . probated will be declared invalid and
    that Defendants be denied any of the benefits of . . .
    [the] will. Granting this relief is precisely what the
    probate exception prohibits because it would require
    the district court to dispose of property in a manner
    inconsistent with the state probate court's
    distribution of the assets.

Id. at 751.  The decision contains no discussion of whether
Kentucky, like West Virginia, permits will contests in its courts
of general jurisdiction.  The decision is thus inapposite.

17

exception when, in <u>Marshall</u>, it was the Supreme Court's purpose to emphasize the narrow nature of the carve out.  <u>See</u> <u>Lefkowitz</u>, 528 F.3d at 106 ("[T]he Supreme Court reigned in the boundaries of the probate exception [in <u>Marshall</u>], articulating its limited application.").

Based upon the foregoing analysis, the court, accordingly, ORDERS that Blair's motion to dismiss be, and it hereby is, denied.

The Clerk is directed to forward copies of this written opinion and order to all counsel of record.

DATED:  August 17, 2009

_____
John T. Copenhaver, Jr.
United States District Judge